IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>v.<br><br>DENIS NGUESSIN KOUAKOU,<br><br>　　　　Defendant. | Case No. 4:25-cr-007<br><br>**DEFENDANT'S SENTENCING MEMORANDUM AND BRIEF IN SUPPORT OF DOWNWARD VARIANCE** |

## I.    **INTRODUCTION**

Denis Nguessin Kouakou faces sentencing after pleading guilty to two counts of making false statements during the purchase of a firearm, in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2).   The primary issue for the Court to resolve at the hearing is the appropriate sentence to impose.[1]   Mr. Kouakou asks the Court to consider this memorandum and brief in support of a downward variance in connection with his sentencing.

## II.    **ISSUES**

By statute, Mr. Kouakou faces a maximum term of ten years' imprisonment on each count.   There is no mandatory minimum.   The Court may impose a term of supervised release of up to three years.   The Court could also impose a fine up to $250,000 and must impose a $100 special assessment for each count.

---

[1] Mr. Kouakou has an outstanding objection to the characterization of his citizenship status as a citizen of another country and permanent resident in the United States on page 2 of the draft presentence investigation report (PSR).   As is noted in paragraph 75, Mr. Kouakou is a derivative citizen of the United States by virtue of his mother's naturalization while he was a minor.   Mr. Kouakou acknowledges that the Court may determine this objection is unnecessary to resolve under Federal Rule of Criminal Procedure 32(i)(3)(B).

The advisory guidelines are not in dispute.   Under USSG § 2K2.1(a)(7), the base offense level is 12.   Mr. Kouakou receives a two-level enhancement under USSG § 2k2.1(b)(1)(A) for the number of firearms involved in the offense.   After a two-level reduction for acceptance of responsibility, the total offense level is 12.   With a criminal history category I based on zero points, the guidelines recommend a sentence between 10 and 16 months of imprisonment.

Mr. Kouakou will ask the Court to vary downward for the reasons discussed below.

## III.   **ARGUMENT**

B. The § 3553(a) factors support a sentence below the advisory guideline range.

The guidelines are only one of many factors a court must consider in fashioning an appropriate sentence. *Kimbrough v. United States*, 552 U.S. 85, 90 (2007).   The Sentencing Reform Act instructs courts "to 'impose a sentence sufficient, but not greater than necessary," to accomplish the goals of sentencing, including 'to reflect the seriousness of the offense,' 'to promote respect for the law,' 'to provide just punishment for the offense,' 'to afford adequate deterrence to criminal conduct,' and 'to protect the public from further crimes of the defendant.'" *Id.* at 101 (quoting 18 U.S.C. § 3553(a)). To that end, Mr. Kouakou asks the Court to consider the following factors in deciding on a sentence.

Mr. Kouakou understands that he committed a serious offense, and as a result, he faces a substantial penalty.   Mr. Kouakou's offense involved straw purchasing firearms in an effort to fit in with his peers.   There is no indication Mr. Kouakou benefitted or profited from his actions.   While his offense was serious, the lack of any monetary benefit to him is mitigating.   Mr. Kouakou's lack of life experience and immaturity have taught

him a hard lesson that will follow him for the rest of his life.

Mr. Kouakou's history and characteristics are mitigating. Now twenty-four years old, Mr. Kouakou was born in Yamoussoukro, Ivory Coast, to his recently widowed mother. PSR ¶ 59. When Mr. Kouakou was just two years old, his family fled from the First Ivorian Civil War and settled in the United States. First in Tennessee, then to Des Moines when Mr. Kouakou was about five years old. Although Mr. Kouakou was raised in a "rougher" neighborhood, he had a good childhood. PSR ¶ 60. He spent his free time playing football and enjoying the company of his siblings and friends. Eventually, Mr. Kouakou's mother remarried, and Mr. Kouakou formed a strong bond with his stepfather. PSR ¶ 59, 65. Mr. Kouakou graduated from high school and has pursued various employment opportunities in the time since. PSR ¶¶ 84, 85a–88. His only prior involvement with the criminal justice system is a traffic ticket. PSR ¶ 53.

The Court should give significant weight to Mr. Kouakou's youth. Mr. Kouakou committed the instant offense when he was twenty-one and twenty-two years old. Today, he is just twenty-four years old. "Immaturity at the time of the offense conduct is not an inconsequential consideration. Recent studies on the development of the human brain conclude that human brain development may not become complete until the age of twenty-five." *United States v. Gall*, 374 F. Supp. 2d 758, 762 n.2 (S.D. Iowa 2005) (Pratt, J.). Mr. Kouakou is an "emerging adult," which is a person who has reached eighteen years old but is not older than twenty-five. Melissa S. Caulum, *Postadolescent Brain Development: A Disconnect Between Neuroscience, Emerging Adults, and the Corrections System*, 2007 Wis. L. Rev. 729, 731 (2007). During emerging adulthood, the brain is still developing, "particularly in the areas of judgment,

3

reasoning, and impulse control." *Id.*   Thus, as is true of juveniles, offenders who are twenty-five years old or younger "can similarly have lessened moral culpability and blameworthiness as a result of their youth and immaturity."   *Id.*; *accord United States v. Nash*, 1 F. Supp. 3d 1240, 1246 (N.D. Ala. 2014) ("[U]ntil age 25, the part of the brain that governs judgment, decision-making[,] and impulse control is still in the developmental process.   Male brains specifically develop even more slowly than female brains; female brains develop an average of two years earlier than male brains.").   Thus, as is true of juveniles, offenders who are twenty-five-years-old or younger "can similarly have lessened moral culpability and blameworthiness as a result of their youth and immaturity."   Kelsey B. Shust, Comment, *Extending Sentencing Mitigation for Deserving Young Adults*, 104 J. Crim. L. & Criminology 667, 693 (2014).   Mr. Kouakou's age likewise limits the deterrent value of a sentence of imprisonment.   *See United States v. Bannister*, 786 F. Supp. 2d 617, 660 (E.D.N.Y. 2011) ("[Deterrent power of either type] may be similarly affected among young people due to the natural rate of brain development.").

Recognizing the continuing nature of brain development as a mitigating factor, the Sentencing Commission amended the guidelines in 2024 to provide for a downward departure based on youthfulness at the time of the offense:

> A downward departure also may be warranted due to the defendant's youthfulness at the time of the offense or prior offenses. Certain risk factors may affect a youthful individual's development into the mid-20's and contribute to involvement in criminal justice systems, including environment, adverse childhood experiences, substance use, lack of educational opportunities, and familial relationships. In addition, youthful individuals generally are more impulsive, risk-seeking, and susceptible to outside influence as their brains continue to develop into young adulthood. Youthful individuals also are more amenable to rehabilitation.

USSG § App. B, part III, § 5H1.1 (Compilation of Deleted Departure Provisions).   While the Commission has since eliminated departures from the guidelines, this change does not undermine the wisdom behind the former departure provisions, rather, it amounts to an effort to align the guidelines with modern sentencing practices.   *See* USSG App. B, part III.   The Court may and should still consider this factor in its § 3553(a) analysis.

Minimizing Mr. Kouakou's exposure to the harms associated with a prison setting while his brain is still developing will place him in the best position to continue along the positive path he's begun to forge.

Notwithstanding his missteps, Mr. Kouakou's future holds promise.   He plans to continue to pursue training in the electrical field, a trade that will help him secure a stable career.   He is a dedicated and loving brother to his siblings.   He maintains strong relationships with his family, providing him with support that will help curb recidivism moving forward.   Educational programming and community support will afford Mr. Kouakou, who is still young enough to change and live a long life as a productive citizen, the best opportunity to decrease the likelihood of recidivism.

Mr. Kouakou's lack of previous incarceration also supports a sentence below the advisory guideline range.   Mr. Kouakou has never before been incarcerated or otherwise meaningfully involved in the criminal justice system.   Quite naturally, any sentence imposed by the Court—even a non-custodial sentence—will have a greater effect on Mr. Kouakou and his likelihood to reoffend than an individual who has previously served jail time or been under court supervision.   Additionally, Mr. Kouakou has no history of violence.   A guideline sentence is unnecessary to send the message of deterrence to a non-violent individual who has not previously faced a term of imprisonment.   *See United*

*States v. Baker*, 445 F.3d 987, 990 (7th Cir. 2006) (affirming below-guidelines sentence premised in part on a finding that "a prison term would mean more to [the defendant] than to a defendant who previously had been imprisoned").

Following the conclusion of this case, Mr. Kouakou will have a felony conviction. This will have a substantial impact on his life moving forward. As a result of his offense, Mr. Kouakou, at the threshold of adulthood, will be branded a felon for the rest of his life. He will lose the right to vote,[2] to serve on a jury,[3] and to possess firearms. In addition to those more-tangible consequences stemming from his felony conviction, Mr. Kouakou will face constraints such as limitations on employability,[4] housing,[5] and the social stigma associated with being a convicted felon.[6] The mere fact of a felony conviction will, for Mr. Kouakou, reflect the seriousness of the offense and provide an additional punitive and deterrent impact to that offered by any sentence imposed by the Court.

The Court should also not discount the ability of a term of supervision to advance

---

[2] If Iowa Executive Order 7 is still in effect when Mr. Kouakou discharges any sentence imposed, his voting rights may be restored. *See Voting Rights Restoration*, Off. of the Governor of Iowa, https://governor.iowa.gov/services/voting-rights-restoration (last visited Jan. 17, 2026).

[3] 28 U.S.C. § 1865(b)(5).

[4] The state of Iowa does not restrict employers from inquiring into prior criminal history or making adverse employment decisions based on the same. *See Iowa Ass'n of Bus. & Indus. v. City of Waterloo*, 961 N.W.2d 465, 477–78 (Iowa 2021) (upholding, in part, city's "ban the box" ordinance).

[5] *See, e.g.*, Iowa Legal Aid, *Finding Housing with a Criminal Record*, https://iowalegalaid.org/resource/finding-housing-with-a-criminal-record/ (Sept. 20, 2025) ("Many landlords will not rent to someone with a criminal record.").

[6] *See generally United States v. Nesbeth*, 188 F. Supp. 3d 179 (E.D.N.Y. 2016) (discussing in depth history and evolution of collateral consequences, and considering collateral consequences in § 3553(a) analysis).

the § 3553(a) factors. *See United States v. Coughlin*, No. 06-20005, 2008 WL 313099, at *10 (W.D. Ark. Feb. 1, 2008) (concluding "punishment [can be] achieved by probation, home detention, and community service"). A supervisory sentence subjects an offender "to several standard conditions that substantially restrict their liberty." *Gall v. United States*, 552 U.S. 38, 48 (2007) (citing *United States v. Knights*, 534 U.S. 112, 119 (2001)). "Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled.'" *Id.* (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987))). As the *Gall* Court noted, "[p]robationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. USSG § 5B1.3. Most probationers are also subject to individual 'special conditions' imposed by the court." *Id.* at 48–49 & 48 n.4.

Further, the Court should consider the harmful effects that will result from incarceration in comparison to potential benefits. Mr. Kouakou has a familial support system and ties to the community, no history of violence, and his status as a felon will prohibit him from purchasing firearms again. "The experience of incarceration will remove [him] from [his] famil[y] and communit[y] and whatever ties [he] may retain to the non-criminal world." *United States v. Bannister*, 786 F. Supp. 2d 617, 658–59 (E.D.N.Y. 2011). He is at low risk for reoffending.

> Among low-risk offenders, those who spent less time in prison were 4% less likely to recidivate than low-risk offenders who served longer sentences. Thus, when prison sentences are relatively short, offenders are more likely

to maintain their ties to family, employers, and their community, all of which promote successful reentry into society. Conversely, when prisoners serve longer sentences they are more likely to become institutionalized, lose pro-social contacts in the community, and become removed from legitimate opportunities, all of which promote recidivism.

*Id.* (quoting Valerie Wright, Sentencing Project, *Deterrence in Criminal Justice: Evaluating Certainty vs. Severity of Punishment* 7 (2010), https://www.sentencingproject.org/wp-content/uploads/2016/01/Deterrence-in-Criminal-Justice.pdf). A term of imprisonment will deteriorate Mr. Kouakou's familial relationships—"Because prisons are often located in rural areas, and because convicts' families and friends have limited ability to travel, convicts' relationships with people on the outside—the people most likely to motivate convicts to lead straight lives—may be eroded seriously during long terms of imprisonment." *Id.* at 659. The Court should take into account these collateral consequences of incarceration when deciding on an appropriate sentence in this case.

Perhaps the most telling factor for what sentence is sufficient, but not greater than necessary, is Mr. Kouakou's conduct since his January 2025 arrest. Mr. Kouakou has shown he is capable of being a productive and law-abiding citizen. He has maintained employment with his older brother's company, Iowa Green Outdoors, as well as briefly working for EP2 (until he was laid off in December) in an effort to get back into the electrical field. PSR ¶¶ 85(a), 86. He has submitted negative urinalyses. PSR ¶ 8. He spends his free time being active in his church. PSR ¶ 61. In the almost one-year period he's been on federal pretrial supervision, Mr. Kouakou has not had a single violation of his conditions of supervision. PSR ¶ 8. Mr. Kouakou has demonstrated, through his actions, that intervention through this criminal proceeding is all that is necessary to divert

him to a positive and crime-free path moving forward. Accordingly, this Court should conclude "that punishment [can be] achieved by probation, home detention, and community service." *United States v. Coughlin*, Crim. No. 06-20005, 2008 WL 313099, at *10 (W.D. Ark. Feb. 1, 2008).

## IV.  CONCLUSION

For the foregoing reasons, Mr. Kouakou respectfully asks the Court to vary downward from the advisory guidelines and impose a term of probation, time served with a term of supervised release, or a sentence otherwise below the advisory guideline range.

Respectfully submitted,

*/s/ Mackenzi J. Nash*
Mackenzi J. Nash, Asst. Federal Defender
FEDERAL PUBLIC DEFENDER'S OFFICE
400 Locust Street, Suite 340
Des Moines, Iowa 50309-2353
PHONE: (515) 309-9610
FAX: (515) 309-9625
E-MAIL: mackenzi_nash@fd.org
ATTORNEY FOR DEFENDANT

CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2026, I electronically filed this document with the Clerk of Court using the ECF system, which will serve it on the appropriate parties.

*/s/ Mackenzi J. Nash*